# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| AMERICAN FIRE AND CASUALTY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:18CV00008 |
| v. | ) ) ) | **OPINION AND ORDER** |
| RALEIGH MINE & INDUSTRIAL SUPPLY, INC., ET AL. | ) ) ) ) | By: James P. Jones<br>United States District Judge |
| Defendants. | ) | |

*Robert S. Reverski, Jr., Midkiff, Muncie & Ross P.C., Richmond, Virginia, for Plaintiff and Counter Defendant; James R. Sheatsley, Gorman, Sheatsley & Company, Beckley, West Virginia, and R. Wayne Austin, Scyphers & Austin, P.C., Abingdon, Virginia, for Defendants and Counter Plaintiffs Raleigh Mine & Industrial Supply, Inc. and Blizzards of Virginia, Inc.*

In this diversity action, the plaintiff insurance company seeks a declaratory judgment that there is no coverage under its commercial policy for loss of certain business inventory on the ground that the defendant insureds have produced insufficient evidence of an actual theft. In response, the defendants have asserted a counterclaim containing tort claims which the insurance company now moves to dismiss. The insurance company also requests that the court bifurcate the defendants' statutory claim for attorneys' fees. For the reasons that follow, I will grant the insurance company's motion.

I.

The Counterclaim alleges the following facts, which I must accept as true for purposes of deciding the motion to dismiss.

Defendant and Counterclaimant Raleigh Mine & Industrial Supply, Inc. ("Raleigh Mine") is a West Virginia corporation with its principal place of business in Mount Hope, West Virginia. Defendant and Counterclaimant Blizzards of Virginia, Inc. ("Blizzards") is a Virginia corporation engaged in the business of fabricating metal doors for the mining industry, with its principal place of business in Bluefield, Virginia. Blizzards is a wholly owned subsidiary of Raleigh Mine.

The plaintiff, American Fire and Casualty Company ("American Fire") issued a commercial insurance policy to Raleigh Mine, effective from July 2017 through July 2018 (the "Policy"). As part of its business, Blizzards maintained a supply of sheet metal blanks at its location in Virginia (the "Premises"). At some point during the Policy term, there was revealed an unexpected shortage of this inventory valued at $774,217. Raleigh Mine notified American Fire of the shortage on September 28, 2017, and then presented a claim for the loss, which Raleigh Mine attributed to theft.

The theft was reported to the Virginia State Police and the defendants provided a sworn statement under oath of the circumstances of the loss to the

insurance company. American Fire's own investigation concluded that the missing inventory was not the result of theft, but instead due to miscalculated inventories. However, at no time did American Fire consult with the Virginia State Police, examine the Premises, interview employees of the defendants, or contact the independent accounting firm that had conducted a pre-loss inventory. Instead, American Fire claims that its investigation revealed that the defendants fabricated the loss.

American Fire seeks a declaratory judgment in its favor that the Policy does not cover the loss.[1] In the alternative, it requests a determination that its obligations are strictly limited to damages as provided by the Policy. The defendants filed a joint Answer and Counterclaim. In their Counterclaim, they assert claims against American Fire for breach of contract (Count I), conversion (Count II), breach of the covenant of good faith and fair dealing (Count III), fraud (Count IV), and intentional misrepresentation (Count V), all arising out of American Fire's refusal to pay the claim under the Policy. American Fire has moved to dismiss Counts II, III, IV, and V of the Counterclaim for failure to state a

---

[1] The Policy provides that American Fire will not pay for loss or damage to "[p]roperty that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property." Compl. Ex. 1, Policy 152, ECF No. 1-1.

claim upon which relief can be granted. The motion to dismiss has been fully briefed and is now ripe for decision.[2]

II.

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a claim. See *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). A court considering a Rule 12(b)(6) motion must accept as true all of the claimant's factual allegations and all favorable inferences that may reasonably be drawn from those allegations. See *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A motion to dismiss should not be granted "unless it appears certain that the [claimant] can prove no set of facts which would support its claim and would entitle it to relief." *Id*.

American Fire asserts that Counts II, III, IV, and V should be dismissed because the relationship between the parties arises solely by virtue of the Policy, and this does not provide a sufficient basis for imposing tort liability. The defendants claim that American Fire "undertook no appropriate investigation" in concluding that there was no evidence to support theft of the inventory and "turned a 'blind eye'" to the defendants' own investigation and evidence, and that these

---

[2] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

acts serve as "the basis for the Counterclaim." Defs.' Mem. Opp'n Mot. Dismiss 2, ECF No. 20.

"The primary consideration underlying tort law is the protection of persons and property from injury, while the major consideration underlying contract law is the protection of bargained for expectations." *Kaltman v. All Am. Pest Control, Inc.*, 706 S.E.2d 864, 870 (Va. 2011) (quoting *Filak v. George*, 594 S.E.2d 610, 613 (Va. 2004)).[3] "[I]n order to recover in tort, the duty tortiously or negligently breached must be a common law [or statutory] duty, not one existing between the parties solely by virtue of the contract." *Augusta Mut. Ins. Co. v. Mason*, 645 S.E.2d 290, 293 (Va. 2007) (internal quotation marks and citations omitted). "[W]hether a cause of action sounds in contract or tort depends on the source of the duty violated," and "a single act or occurrence can, in certain circumstances, support causes of action both for breach of contract and for breach of a duty arising in tort." *Kaltman*, 706 S.E.2d at 869 (internal quotation marks and citations omitted). However, mere "allegations of negligent performance of contractual duties . . . [are] not actionable in tort," and "[l]osses suffered as a result of the breach of a duty assumed only by agreement, . . . remain the sole province of the law of contracts." *Kaltman*, 706 S.E.2d at 869, 870 (internal quotation marks and citations omitted). Under Virginia law, a tort claim does not arise simply by

---

[3] The parties agree that Virginia law applies to the substantive issues in this case.

alleging that an individual "was actuated by malicious motives in breaching [a] contract." *A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 677 (4th Cir. 1986) (internal quotation marks and citation omitted).

I agree with American Fire. The facts presently alleged are insufficient to create independent tort liability. By the defendants' own language, each of the tort counterclaims identify some action or inaction by American Fire arising out of an obligation owed under the Policy. For example, in Counts II, IV, and V, the allegations center on American Fire's failure or refusal to pay the claim *under the Policy* and American Fire's representation that it would pay in the event the defendants sustained a loss. Likewise, in Count III, the defendants assert that American Fire violated the duty of good faith and fair dealing by "its failure and reluctance to act in a timely manner" and "by engaging in a course of conduct designed to hinder and delay the timely payment of the proceeds of the insurance contract in this matter." Countercl. ¶¶ 27-28, ECF No. 12.

Clearly, any duty breached as alleged by the defendants exists solely by reason of the Policy. Even assuming that American Fire's failure to confer with the Virginia State Police or the defendants' independent accounting firm constitutes "acts of nonfeasance" or "an act of commission" as the defendants claim, these acts nevertheless arise out of "the contractual duties imposed upon [American Fire] by the insurance policy." Defs.' Mem. Opp'n Mot. Dismiss 8,

ECF No. 20.  Therefore, because each particular tortious breach alleged by the defendants in Counts II through V "'relate[s] to a duty or an obligation that was specifically required by the . . . [c]ontract,'" these acts fall squarely within the breach of contract context and do not give rise to tort liability.  *Kaltman*, 706 S.E.2d at 869 (quoting *Richmond Metro. Auth.*, 507 S.E.2d at 347).  Accordingly, I will grant the motion to dismiss Counts II, III, IV and V.[4]

American Fire also requests that the defendants' demand for attorneys' fees be bifurcated for separate proceedings pursuant to Federal Rule of Civil Procedure 42(b).  The defendants agree that the issue of attorney's fees may be determined by the court following resolution of the substantive claim in this case, but object to bifurcation with respect to discovery.

Although Virginia law does not recognize a separate bad faith cause of action, a Virginia statute allows the court to award attorneys' fees and costs to the insured if "the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy."  Va. Code Ann. § 38.2-209(A).  Moreover, "[a] judge, not a jury, must

---

[4] American Fire argues that Count III should also be dismissed because Virginia law does not recognize claims for breach of the implied covenant of good faith and fair dealing.  Because I find it proper to dismiss Count III on other grounds, I need not rely upon this argument.  However, it is correct that Virginia law does not recognize an independent tort claim of bad faith in the context of insurance disputes.  *See A & E Supply Co.*, 798 F.2d at 676 ("[I]n a first-party Virginia insurance relationship, liability for bad faith conduct is a matter of contract rather than tort law.  The obligation arises from the agreement and extends only to situations connected with the agreement.").

determine whether an insurer has either denied coverage or failed or refused to make payment to the insured under the policy in bad faith." *REVI, LLC v. Chi. Title Ins. Co.*, 776 S.E.2d 808, 814 (Va. 2015) (internal quotation marks and citation omitted).

I will make a determination on bad faith under the Virginia statute in separate proceedings in the event that the defendants are successful on the coverage issue, and discovery on the issue of bad faith will be stayed until the underlying issue is resolved. Accordingly, I will grant American Fire's motion to bifurcate. *See Mass. Bay Ins. Co. v. Decker*, No. 7:11-CV-00342, 2012 WL 43614, at *2 (W.D. Va. Jan. 9, 2012).

### III.

For the foregoing reasons, the Motion to Dismiss Counts II, III, IV, and V of the Counterclaim and to Bifurcate the Claim for Attorneys' Fees and Costs, ECF No. 14, is GRANTED.

It is so **ORDERED**.

ENTER: September 14, 2018

/s/ James P. Jones
United States District Judge